UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA SANDOVAL, | ) Case No. EDCV 08-1588-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /

/ / /

/ / /

**I.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

1

**DISPUTED ISSUES**

2     As reflected in the Joint Stipulation, the disputed issues which Plaintiff

3  raises as the grounds for reversal and/or remand are as follows:

4         1.      Whether the Administrative Law Judge ("ALJ") properly considered

5                 the treating physician's opinion regarding Plaintiff's physical and

6                 mental limitations;[3]

7         2.      Whether the ALJ properly considered the severity of Plaintiff's

8                 mental impairment;

9         3.      Whether the ALJ properly evaluated Plaintiff's credibility; and

10        4.      Whether the ALJ posed a complete hypothetical to the vocational

11                expert ("VE").

12  (JS at 2-3.)

13

**II.**

14

**STANDARD OF REVIEW**

15     Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision

16  to determine whether the Commissioner's findings are supported by substantial

17  evidence and whether the proper legal standards were applied.  DeLorme v.

18  Sullivan, 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence means "more

19  than a mere scintilla" but less than a preponderance.  Richardson v. Perales, 402

20  U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of

21  Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988).  Substantial

22  evidence is "such relevant evidence as a reasonable mind might accept as adequate

23  to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The

24  Court must review the record as a whole and consider adverse as well as

25  supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).

26  Where evidence is susceptible of more than one rational interpretation, the

27

28        [3] The Court has combined Plaintiff's first and second claim regarding the
ALJ's evaluation of the treating physician's opinion.

2

1  Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452
2  (9th Cir. 1984).

### III.

### DISCUSSION

**A.    The ALJ Properly Considered the Opinion of Plaintiff's Treating Physician Regarding Her Physical and Mental Limitations.**

7         Plaintiff contends that the ALJ erroneously rejected the opinion of the
8  treating physician, Dr. Guy Gottschalk, regarding Plaintiff's physical and mental
9  limitations.  (JS at 3-5, 8-10.)  The Court disagrees.

**1.    Applicable Law.**

11        It is well-established in the Ninth Circuit that a treating physician's opinions
12 are entitled to special weight, because a treating physician is employed to cure and
13 has a greater opportunity to know and observe the patient as an individual.
14 McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating
15 physician's opinion is not, however, necessarily conclusive as to either a physical
16 condition or the ultimate issue of disability."  Magallanes v. Bowen, 881 F.2d 747,
17 751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on
18 whether it is supported by sufficient medical data and is consistent with other
19 evidence in the record.  See 20 C.F.R. § 404.1527(d)(2).  If the treating physician's
20 opinion is uncontroverted by another doctor, it may be rejected only for "clear and
21 convincing" reasons.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v.
22 Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating physician's opinion
23 is controverted, it may be rejected only if the ALJ makes findings setting forth
24 specific and legitimate reasons that are based on the substantial evidence of record.
25 Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at
26 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).
27        However, the Ninth Circuit also has held that "[t]he ALJ need not accept the
28 opinion of any physician, including a treating physician, if that opinion is brief,

3

1    conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at

2    957; see also Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.

3    1992).  A treating or examining physician's opinion based on the plaintiff's own

4    complaints may be disregarded if the plaintiff's complaints have been properly

5    discounted.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir.

6    1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews

7    v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).  Additionally, "[w]here the opinion

8    of the claimant's treating physician is contradicted, and the opinion of a

9    nontreating source is based on independent clinical findings that differ from those

10   of the treating physician, the opinion of the nontreating source may itself be

11   substantial evidence; it is then solely the province of the ALJ to resolve the

12   conflict."  Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v.

13   Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

14       **2.      Physical Capacity Opinion.**

15       Plaintiff asserts that the ALJ failed to provide specific or legitimate reasons

16   supported by substantial evidence to reject Dr. Gottschalk's March 26, 2008, report

17   regarding Plaintiff's physical limitations.  (JS at 3-5.)

18

19       On March 26, 2008, Dr. Gottschalk completed a three-page opinion

20   regarding Plaintiff's physical ability to perform work-related activities.

21   (Administrative Record ("AR") at 323-35.)  The opinion primarily consisted of

22   check-the-box responses, with no narrative explanation.  (Id.)  Dr. Gottschalk

23   opined that Plaintiff:  (i) can lift less than ten pounds occasionally and frequently;

24   (ii) can stand, walk, and sit less than two hours in an eight-hour workday; (iii) must

25   walk five minutes every thirty minutes; (iv) must shift at will from sitting, standing

26   or walking; (v) will need to lie down at unpredictable intervals during a work shift;

27   (vi) can never crouch or climb ladders; (vii) can occasionally twist, stoop, bend, or

28   climb stairs; (viii) must avoid exposure to extreme heat, wetness, humidity, fumes,

4

odors, dusts, gases, poor ventilation, hazards, machinery, and heights; (ix) must avoid moderate exposure to extreme cold and noise.  (Id.)  Based on Dr. Gottschalk's 2008 findings, Plaintiff would be completely disabled and unemployable.  (Id. at 15, 323-25.)

The ALJ, however, explicitly gave "little to no weight" to Dr. Gottschalk's 2008 physical capacity opinion, as it was brief and inadequately supported by clinical findings.  (Id. at 15); Thomas, 278 F.3d at 957.  The ALJ noted that Dr. Gottschalk's 2008 opinion was inconsistent or even contradictory to Dr. Gottschalk's previous narrative opinions.  (Id.)  The ALJ stated:

> The answers in the preprinted forms suggest that claimant is unemployable or totally disabled.  However, the answers in narrative reports, i.e., when the doctor was stating his own thoughts in his own words rather than filling out a preprinted form, are completely opposite.

(Id.).  The record supports the ALJ's finding.  Plaintiff was previously treated by Dr. Gottschalk from December 8, 2004, through September 13, 2006.  (AR at 183-243.)  Throughout this period, Dr. Gottschalk completed detailed, narrative reports regarding Plaintiff's condition, treatment, progress, and functional ability to perform work.  (Id.)  Dr. Gottschalk's detailed reports, unlike the 2008 opinion, indicated that, "[Plaintiff] is capable of gainful employment, but she is not capable of returning to her previous type of work activities, as there is too much repetitive trauma involved."  (Id. at 189, 201, 209, 218, 232, 239.)  Dr. Gottschalk also maintained that Plaintiff was capable of vocational rehabilitation.  (Id.)  In the 2008 opinion, consisting primarily of check-the-box responses with no narrative explanation, Dr. Gottschalk failed to explain the more restrictive limitations or the cause of Plaintiff's alleged deterioration.  (Id. at 323-25.)  Moreover, it is notable that Plaintiff's treatment history with Dr. Gottschalk has an approximately two-year gap; there is no evidence in the longitudinal record to support Plaintiff's

1    markedly limited functional abilities in 2008.  (Id. at 14-15, 29, 183-243, 323-25.)

2    Based upon the inconsistencies with the previous reports and the check-the-box

3    nature of the 2008 opinion, Dr. Gottschalk's opinion is not entitled to great

4    deference.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly

5    rejected doctor's opinion because they were check-off reports that did not contain

6    any explanation of the bases of their conclusions); see also Morgan, 169 F.3d at

7    602.

8          Further, in rejecting the opinion of Dr. Gottschalk, the ALJ relied upon the

9    medical opinions of several treating and consultative physicians.  (AR at 14-15.)

10   Dr. Mason Hohl, the agreed upon medical examiner in Plaintiff's worker

11   compensation case, opined that Plaintiff was a candidate for vocational

12   rehabilitation and her injuries resulted in a finding of partial disability.  (Id. at 265-

13   80.)  As the ALJ noted, Dr. Hohl's findings were consistent with Dr. Gottschalk's

14   detailed reports, a specific and legitimate reason based on substantial evidence to

15   reject the contrary 2008 opinion.  (Id. at 15, 183-243); Thomas, 278 F.3d at 957;

16   Magallanes, 881 F.2d at 751.

17         Next, the ALJ noted that the findings of the consultative physicians, Dr.

18   Nicholas N. Lin and Dr. Thomas R. Dorsey, were also consistent with the finding

19   that Plaintiff was not totally disabled.  (AR at 14, 168-72, 244-49.)  After

20   completing an orthopaedic consultation, Dr. Dorsey opined that Plaintiff was

21   capable of performing light work with limitations due to her carpal tunnel

22   syndrome.  (Id. at 172.)  Similarly, after performing a complete internal medicine

23   evaluation, Dr. Lin opined that Plaintiff was capable of performing light work,

24   with limitations, *inter alia*, as to fine and gross manipulation.  (Id. at 248-49.)

25   Thus, both consultative physicians opined that Plaintiff was not totally disabled,

26   contrary to Dr. Gottschalk's 2008 opinion.  The opinions of the consultative

27   physicians constitute substantial evidence since they were based on independent

28

clinical findings, and any conflict between these findings and Dr. Gottschalks' opinion is for the ALJ to resolve.  See Andrews, 53 F.3d at 1041 (opinion of nontreating source based on independent clinical findings may itself be substantial evidence).

Finally, in discrediting Dr. Gottschalk's 2008 opinion, the ALJ also considered the inconsistences between the physical assessment and other record evidence.  (AR at 15.)  The ALJ noted the contradictions between Plaintiff's testimony and the 2008 opinion.  (Id.)  Specifically, Plaintiff testified that she can lift ten pounds and sit for four hours in an eight-hour workday.  Dr. Gottschalk opined, however, that Plaintiff is unable to lift ten pounds, and could sit less than two hours in an eight-hour workday.  (Id. at 41-45, 323-25.)  The ALJ also indicated, and the Court's review of the record suggests, that there was no support for Dr. Gottschalk's opinion that Plaintiff avoid all exposure to fumes, odors, etc. (Id. at 15); see also Thomas, 278 F.3d at 957.

Based on the foregoing, the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to reject the 2008 opinion of Dr. Gottschalk.  Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849.  Thus, there was no error.[4]

### 3.    Mental Limitations.

Plaintiff also contends that the ALJ failed to provide specific or legitimate reasons supported by substantial evidence to reject Dr. Gottschalk's 2008 opinion regarding Plaintiff's mental limitations.  (JS at 8-10.)

On March 26, 2008, Dr. Gottschalk also completed a two-page evaluation of

---

[4]  Plaintiff argues that Dr. Gottschalk's 2008 opinion would justifiably differ from his previous findings, as Plaintiff's functional abilities decreased from her 2006 visit until the 2008 visit.  (JS at 3.)  However, there is no evidence, such as treatment records or other credible testimony, to support this contention.

1   Plaintiff's mental capacity.  (AR at 320-21.)  Here again, the evaluation consisted

2   solely of check-the-box responses, with no narrative explanation.  (Id.)  Dr.

3   Gottschalk opined that Plaintiff is markedly limited in her ability to perform

4   activities within a schedule, maintain regular attendance, and be punctual within

5   customary tolerances.  (Id.)  Dr. Gottschalk also determined that Plaintiff was

6   moderately limited in her ability to interact appropriately with the general public.

7   (Id.)  Dr. Gottschalk indicated that Plaintiff's mental impairments or treatment

8   would cause her to be absent three or more days from work.  (Id.)

9       Here, the ALJ rejected Dr. Gottschalk's 2008 findings, but only explicitly

10  provided specific and legitimate reasons for rejecting the physical limitations as

11  discussed above.  See supra, Discussion Part III.A.2.  However, the error, if any,

12  was harmless because the ALJ rejected Plaintiff's allegations regarding her mental

13  limitations, thereby implicitly rejecting Dr. Gottschalk's mental capacity

14  evaluation.  (AR at 12); see also Stout v. Comm'r of Soc. Security, 454 F.3d 1050,

15  1055 (9th Cir. 2006) (an ALJ's error is harmless where such error is

16  inconsequential to the ultimate non-disability determination); Curry v. Sullivan,

17  925 F.2d 1127, 1131 (9th Cir. 1991) (harmless error rule applies to review of

18  administrative decisions regarding disability).  The ALJ provided:

19      While the claimant complained early in this claim of depression, she has

20      had no treatment for any mental disorders.  At the time of the

21      consultative psychiatric evaluation, she complained primarily of pain and

22      its effects on her sleep and functioning.  The formal mental status

23      examination findings at that time were well within normal limits,

24      including memory and maintenance of concentration and attention.  I

25      conclude then as did the consultative psychiatric examiner that the

26      claimant has no medically determinable mental impairment.

27

28  (AR at 12 (citations omitted).)

8

1    The record support the ALJ's finding.  With the exception of Dr.
2 Gottschalk's check-the-box report conducted three weeks prior to the
3 administrative hearing, there is no indication that Plaintiff ever complained of or
4 was treated for any mental impairments.  Further, Dr. Gottschalk's check-the-box
5 evaluation is not entitled to great deference, as he failed to provide an explanation
6 for the bases of his conclusions.  Crane, 76 F.3d at 253; see also Morgan, 169 F.3d
7 at 602.  The ALJ also relied upon the findings of the consultative psychiatrist, Dr.
8 Reynaldo Abejuela.  (AR at 12, 252-58.)  Dr. Abejuela noted that Plaintiff never
9 visited a psychiatrist or psychologist, was never hospitalized for a psychiatric
10 illness, and was not taking any psychiatric medications.  (Id. at 256.)  Based upon
11 his psychiatric examination of Plaintiff, Dr. Abejuela concluded there is "no
12 evidence of depression or anxiety [and] . . . [c]ognitive functioning is within
13 normal limits.  (Id.)  Contrary to Dr. Gottschalk's findings, Dr. Abejuela opined
14 that Plaintiff has no mental restriction in her daily activities or social functioning.
15 (Id. at 257, 320-21.)  Thus, the ALJ relied upon the brief nature of Dr. Gottschalk's
16 report, the lack of medical treatment for Plaintiff's alleged mental limitations, and
17 a contrary finding based upon an independent clinical examination to reject the
18 mental capacity evaluation.  Thomas, 278 F.3d at 957; Andrews, 53 F.3d at 1041;
19 Magallanes, 881 F.2d at 751; Miller, 770 F.2d at 849.  Accordingly, the ALJ
20 implicitly provided specific and legitimate reasons based on substantial evidence of
21 record to reject Dr. Gottschalk's mental capacity evaluation, and Plaintiff is not
22 entitled to relief on this claim.  Thomas, 278 F.3d at 957; Magallanes, 881 F.2d at
23 751.
24 / / /
25 / / /
26
27 **B.    The ALJ Did Not Err by Failing to Consider the Severity of Plaintiff's**
28      **Alleged Mental Impairment.**

9

1   Plaintiff contends that the ALJ failed to properly consider the severity of her

2   mental impairment.  (JS at 11-12.)  As stated above, the ALJ properly rejected Dr.

3   Gottschalk's mental capacity evaluation, as it was brief and inadequately supported

4   by the consultative examination and treatment records.  See supra, Discussion Part

5   III.A.3.  The ALJ considered the severity of Plaintiff's alleged mental impairment

6   and specifically concluded that Plaintiff has "no medically determinable mental

7   impairment."  (AR at 12.)  Accordingly, the Court finds that the ALJ did not err, as

8   he properly considered whether Plaintiff had any alleged mental impairments and

9   the severity of any impairments.

10  **C.    The ALJ Properly Evaluated Plaintiff's Credibility.**

11  Plaintiff contends the ALJ erroneously assessed Plaintiff's credibility by

12  failing to provide clear and convincing reasons for rejecting her subjective pain

13  testimony.  (JS at 13-15.)  Specifically, Plaintiff claims the ALJ improperly

14  rejected Plaintiff's testimony regarding her "severe depression, severe mental

15  impairments, severe and chronic back pain, numbness in her arms and legs, broken

16  sleep, chronic fatigue, and multiple physical limitations."[5]  (Id. at 13.)

17

18  **1.     Applicable Law.**

19  An ALJ's credibility finding must be properly supported by the record and

20  sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily

21  reject a claimant's subjective testimony.  Bunnell v. Sullivan, 947 F.2d 341, 345-

22  47 (9th Cir. 1991).  An ALJ's assessment of pain severity and claimant credibility

23

24

25      [5]  The Court finds that Plaintiff never testified that she suffered from severe
depression or mental impairments at the administrative hearing.  Nevertheless, the
26  Court has already discussed the ALJ's proper finding that Plaintiff did not have
any severe mental impairments.  See supra, Discussion Part III.A-B.  Thus, the
27  Court will not discuss Plaintiff's alleged mental impairments in the credibility
28  discussion.

1  is entitled to "great weight."  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir.

2  1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986).  When, as here, an

3  ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny

4  benefits, the ALJ must make explicit credibility findings.  Rashad v. Sullivan, 903

5  F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir.

6  1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit

7  finding that claimant was not credible is insufficient).

8         Under the "Cotton test," where the claimant has produced objective medical

9  evidence of an impairment which could reasonably be expected to produce some

10 degree of pain and/or other symptoms, and the record is devoid of any affirmative

11 evidence of malingering, the ALJ may reject the claimant's testimony regarding

12 the severity of the claimant's pain and/or other symptoms only if the ALJ makes

13 specific findings stating clear and convincing reasons for doing so.  See Cotton v.

14 Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d

15 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993);

16 Bunnell, 947 F.2d at 343.

17        To determine whether a claimant's testimony regarding the severity of his

18 symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1)

19 ordinary techniques of credibility evaluation, such as the claimant's reputation for

20 lying, prior inconsistent statements concerning the symptoms, and other testimony

21 by the claimant that appears less than candid; (2) unexplained or inadequately

22 explained failure to seek treatment or to follow a prescribed course of treatment;

23 (3) the claimant's daily activities; and (4) testimony from physicians and third

24 parties concerning the nature, severity, and effect of the claimant's symptoms.

25 Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80

26 F.3d at 1284.

27        Social Security Ruling ("SSR") 96-7p further provides factors that may be

28

11

considered to determine a claimant's credibility such as:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

## 2.    Analysis.

At the hearing, Plaintiff testified, *inter alia*, that she suffered from chronic back pain, numbness in her arms and legs, fatigue, an inability to sleep, and pain in her hands and shoulders.  (AR at 35-40.)  In his decision, the ALJ rejected Plaintiff's testimony regarding her subjective complaints based upon several reasons, including contrary medical evidence or treatment records, Plaintiff's inconsistent statements, and other non-credible statements.  (Id. at 12-15.)

The ALJ based his adverse credibility determination on the findings of the medical sources and the lack of objective medical evidence to support Plaintiff's disabling symptoms.  (Id.)  The ALJ stated:

> With regard to her upper extremity impairments, the claimant has had mild to moderate limitation of shoulder and neck motions, but there has been no swelling, tenderness, or limitation of motion in her hands or wrists, and grip strength, although reduced, has been functional and without any muscle atrophy.  With regard to the lumbar spine, spinal motion has been moderately limited, but there has been no disturbance

1   of gait or station and no consistent neurological deficits.

2   (AR at 12.)  To substantiate this finding, the ALJ relied in part on the findings of

3   the doctors involved in Plaintiff's worker's compensation claim.  (Id. at 12, 14.)

4   Plaintiff had a history of carpel tunnel syndrome and associated injuries.  (Id. at

5   153, 160.)  In November 2003, Plaintiff filed a worker's compensation claim

6   alleging a progression of her injuries in her upper extremities, neck, and upper

7   back.  (Id.)  In September 2004, after undergoing endoscopic carpel tunnel release

8   in April 2004, Plaintiff was examined by Dr. Brent W. Miller.  (Id. at 128-30.)  Dr.

9   Miller indicated that Plaintiff has a "full and complete range of motion of both

10  elbows, wrists, and all digits."  (Id. at 129.)  Dr. Miller also opined that Plaintiff's

11  hands had reached "maximum medical improvement."  (Id.)  As to Plaintiff's grip

12  strength, Dr. Miller assessed:

13
14      I have absolutely no anatomic reasons to explain this lady's extremely
        poor grip strength.  There is no physical reason why she should have
15      such terrible grip strength.  Especially in light of a relatively normal
16      physical examination.
17

18  (Id.)  From December 8, 2004, through September 13, 2006 , Plaintiff was

19  evaluated by Dr. Gottschalk, who found Plaintiff to be "permanent and stationary

20  regarding her upper extremities" and partially disabled to her injuries.[6]  (Id. at 188-

21  90, 200-01, 208-09, 217-18, 232, 239.)  As the ALJ noted, Dr. Gottschalk's

22  evaluations and treatment of Plaintiff "provided no indication of any change in

23  [Plaintiff's] underlying medical condition. . . ."  (Id. at 14, 185-243.)  Furthermore,

24  Dr. Hohl's treatment of Plaintiff affirmed Dr. Gottschalk's findings, supporting a

25  finding partial disability.  (Id. at 265-80.)  Thus, the conclusions of Plaintiff's

26
27      [6]  The Court notes that Dr. Gottschalk's 2008 opinions would suggest a
    greater degree of disability.  However, as discussed above, the ALJ properly
28  discredited these findings.  See supra, Discussion Part III.A.

13

1  treating physicians do not support Plaintiff's testimony of disabling subjective

2  symptoms.

3      The ALJ also relied on the consultative examiners to reject Plaintiff's

4  credibility.  After completing an orthopaedic consultation, Dr. Lin indicated that

5  Plaintiff's range of motion in her shoulders, elbows, wrists, hips, knees, and ankles

6  was grossly normal.  (Id. at 171.)  Dr. Lin also indicated that Plaintiff's

7  neurological, cervical spine, lumbar spine, station and gait, and joint examinations

8  were all normal.  (Id. at 170-72.)  Similarly, Dr. Dorsey also examined Plaintiff

9  and indicated that her range of motion in her shoulders, elbows, hands, wrists, hips,

10 and knees were grossly normal.  (Id. at 247-48.)  As to Plaintiff's wrists and hands,

11 Dr. Dorsey stated, "There is no evidence of tenderness to palpation of the wrists."

12 (Id. at 247.)  Dr. Dorsey also opined that Plaintiff's gait is within normal limits,

13 and he provided normal neurological findings.  (Id. at 248.)  Thus, the conclusions

14 of the consultative physicians do not support Plaintiff's testimony of disabling

15 subjective symptoms.  Accordingly, the ALJ properly discounted Plaintiff's

16 credibility based upon the findings from her treating and consultative physicians

17 regarding the nature, severity, and effect of her disabling complaints.  See Thomas,

18 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

19     Next, the ALJ relied upon Plaintiff's inconsistent or implausible statements

20 to reject her credibility.  (AR at 15-16.)  The ALJ provided the following

21 examples:

22

23     The claimant testified during the hearing that she could only stand for a

24     maximum of three minutes.  However, the claimant's own doctor said

25     she could stand five times longer than that. . . . [¶]  The claimant testified

26     during the hearing that her condition has kept her from even looking for

27     work.  A review of the medical records of the claimant's treating doctor,

28     however, suggests otherwise.  In 2006, references are made to "school"

14

and "business courses" and the following year a reference is made to "looking for work, bookkeeping stuff." Accordingly, her testimony at the hearing is inconsistent with evidence of record as a whole and can be given no weight except to the extent it is consistent with the residual functional capacity found herein above.

(Id.) The record support the ALJ's findings. (AR at 32-48, 287, 306, 312, 330.) The ALJ also found Plaintiff's visit to Dr. Gottschalk approximately three weeks prior to the administrative hearing, after not seeing any doctors for a significant period, to be highly suspicious. (Id. at 15, 28-30, 320-25.) The ALJ indicated that the reason for the visit "suggested a purpose other than solely the need for medical treatment." (Id. at 15.) Moreover, Plaintiff testified she was financially unable to visit a doctor for seven months prior to the hearing. (Id. at 28-30.) However, Plaintiff received a worker's compensation settlement of $49,000.00, which the ALJ found contrary to Plaintiff's contention that she lacked financial resources to see a doctor. (Id. at 15, 26.) Accordingly, this Court finds, as the ALJ found, that Plaintiff's statements are suspect and inconsistent. Thomas, 278 F.3d at 958-59; see also Smolen, 80 F.3d at 1284.

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony regarding her subjective symptoms. Thus, there was no error.

**D.    The ALJ Posed a Complete Hypothetical to the VE.**

Plaintiff also claims that the ALJ erred by posing an incomplete hypothetical to the VE when the ALJ failed to set include Plaintiff's multiple marked and moderate mental limitations. (JS at 17-19.) The Court disagrees.

"In order for the testimony of a VE to be considered reliable, the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." Thomas, 278 F.3d at 956 (quoting

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>Flores v. Shalala</u>, 49 F.3d 562, 570-71 (9th Cir. 1995)).  Hypothetical questions posed to a VE need not include all alleged limitations, but rather only those limitations which the ALJ finds to exist.  <u>See, e.g.</u>, <u>Magallanes v. Bowen</u>, 881 F.2d 747, 756-57 (9th Cir. 1989); <u>Copeland v. Bowen</u>, 861 F.2d 536, 540 (9th Cir. 1988); <u>Martinez v. Heckler</u>, 807 F.2d 771, 773-74 (9th Cir. 1986).  As a result, an ALJ must propose a hypothetical that is based on medical assumptions, supported by substantial evidence in the record, that reflects the claimant's limitations.  <u>Osenbrock</u>, 240 F.3d at 1163-64 (citing <u>Roberts v. Shalala</u>, 66 F.3d 179, 184 (9th Cir. 1995)); <u>see also</u> <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995) (although the hypothetical may be based on evidence which is disputed, the assumptions in the hypothetical must be supported by the record).

Here, as stated above, the ALJ implicitly provided specific and legitimate reasons supported by substantial evidence to reject Plaintiff's alleged mental limitations as determined by Dr. Gottschalk.  <u>See supra</u>, Discussion Part. III.A.3.  Specifically, the ALJ relied on the findings of the consultative psychiatric examination, the lack of treatment records regarding mental limitations, and the inadequacy of Dr. Gottschalk's 2008 report to reject Plaintiff's alleged mental limitations.  <u>Id.</u>  Accordingly, there was no error in the ALJ's hypothetical questions to the VE which did not include any alleged mental limitations.  <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial evidence, the ALJ did not err in omitting the other limitations that Rollins had claimed, but had failed to prove.").

/ / /

/ / /

**IV.**

**<u>ORDER</u>**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: October  30, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

17